UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>DAVID SHAH,<br><br>            Defendant. | Criminal Action No. 20-00097 (CKK) |

**MEMORANDUM OPINION**
(September 16, 2022)

In this criminal action, Defendant David Shah ("Defendant" or "Mr. Shah") pled guilty to one count of Conspiracy to Commit Offenses against the United States (18 U.S.C. § 371), namely Wire Fraud (18 U.S.C. § 1343) and Major Fraud against the United States (18 U.S.C. §1031(a)). Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, Defendant and the Government agreed that a maximum sentence of five years, followed by three years of supervised release, was an appropriate sentence. Prior to sentencing, Defendant has filed his [42] Motion to Withdraw Guilty Plea. Mr. Shah argues that he should be permitted to withdraw his guilty plea because his guilty plea was entered "unknowingly and involuntarily" insofar as he: (1) expressed his desire not to plead guilty prior to his Rule 11 colloquy; and (2) he lacked a basic understanding of the nature of the charge to which he pleaded guilty because (a) he did not possess competent English verbal communication skills sufficient for a legal proceeding, (b) he has only an incomplete high school education; and (3) he was suffering emotional distress as a result of the death of his child. *See* Defendant's Motion to Withdraw Guilty Plea, ECF No. 42, at 1; Defendant's Memorandum in Support

1

of Motion to Withdraw Guilty Plea, ECF No. 42-1, at 1.[1]  Defendant argues also that he has a viable claim of innocence.  *See* Def.'s Mem., ECF No. 42-1, at 12-14; Def.'s Reply, ECF No. 45, at 5.  The Government opposes the withdrawal of Defendant's guilty plea.  Upon consideration of the pleadings, the relevant legal authorities, and the record as a whole, the Court DENIES Defendant's Motion to Withdraw his Guilty Plea.[2]

## I. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 11, a defendant is permitted, before a sentence is imposed, to withdraw a guilty plea if the defendant can show "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); *United States v. Jones*, 472 F.3d 905, 907 (D.C. Cir. 2007).  While presentence withdrawal motions should be "'liberally granted,' they are 'not granted as a matter of right.'" *United States v. Thomas*, 541 F. Supp. 2d 18, 23 (D.D.C. 2008) (quoting *United States v. Ahn*, 231 F.3d 26, 30 (D.C. Cir. 2000)). The decision to grant a withdrawal is within the trial court's discretion.  *United States v. Tolson*, 372 F. Supp. 2d 1, 8 (D.D.C. 2005).

When ruling on a motion to withdraw a guilty plea, courts in this Circuit consider the

---

[1] Defendant makes one reference to his prior attorney providing "ineffective representation," Def.'s Mem., ECF No. 42-1, at 1, but he never elaborates on this claim or advances any argument on the basis of ineffective assistance of counsel pursuant to the standard in *Strickland v. Washington*, 466 U.S. 688 (1984).  Defendant argues instead pursuant to the legal standard for withdrawing a guilty plea under Fed. R. Crim P. 11.  Accordingly, the Government did not address the ineffective assistance of counsel claim, Govt. Opp'n, ECF No. 44, at 8 n.5, nor did this Court.

[2] The Court considered the following documents in connection with the drafting of this opinion: (1) Plea Agreement, ECF No. 3; (2) Statement of the Offense, ECF No. 15; (3) Transcript of the Arraignment, ECF No. 41; (4) Transcript of the Change of Plea, ECF No. 40; (5) Defendant's Motion To Withdraw Guilty Plea ("Def.'s Mot."), ECF No. 42, and the Memorandum in support thereof ("Def.'s Mem."), ECF No. 42-1; (6) the Government's Memorandum in Opposition to Defendant's Motion to Withdraw Plea ("Govt. Opp'n"), ECF No. 44, and the exhibits attached thereto; (7) Defendant's Reply in Support of Motion to Withdraw Guilty Plea ("Def.'s Reply"), ECF No. 45; and (8) the entire record in this case.

following factors: "(1) whether the defendant asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted." *United States v. Taylor*, 139 F.3d 924, 929 (D.C. Cir. 1998) (internal quotation marks omitted). The third factor is viewed as the "most important." *Id.* (internal quotation marks omitted). In the present case, the Government does not claim that it would be "substantially prejudiced" by the withdrawal of Defendant's guilty plea. Govt. Opp'n, ECF No. 44, at 9 n.6. Therefore, this analysis focuses on the first and third factors, beginning with the third factor as it is the most influential. *See United States v. Cray*, 47 F.3d 1203, 1208 (D.C. Cir. 1995) (adopting "more structured inquiry-focusing first on the most important, indeed determinative factor").

## II. FACTUAL BACKGROUND

On June 29, 2020, a criminal information was filed against David Shah, stating that he violated 18 U.S.C. § 371 by conspiring with others to commit offenses against the United States for the purpose of fraudulently earning bonuses for himself, his co-conspirators, and their employer by providing false information regarding prospective linguist candidates for the United States military. ECF No. 2. The case was set for an arraignment and plea hearing on July 28, 2020, and the Court began by arraigning Mr. Shah before moving to a Rule 11 plea colloquy. July 28, 2020 Arraignment Transcript ("Tr."), ECF No. 41, at 1-5. The Court set out the agenda for the colloquy and began summarizing the terms of the plea agreement, *id.* at 5-8, but after that summary, the Defendant made a lengthy narrative statement that the reason he "agreed" was that the cases were long ago and he deployed three times from the military and he worked with the company at issue in this case. *Id.* at 8-9. Defendant referenced also "[his] injuries from his deployment that [might] affect his memory," *id.* at 9, and at that point, the Court decided to

3

continue the plea hearing and directed the Government and defense counsel to file a status report as to whether Defendant would proceed with the guilty plea. *Id.* at 10.

Mr. Shah was released on his personal recognizance, and a status/plea hearing was scheduled for September 14, 2020, with a status report due by August 21, 2020. A plea hearing was held on September 14, 2020, and Mr. Shah was represented by counsel and placed under oath. No interpreter was present at either the July 28, 2020 or the September 14, 2020 hearing because neither Defendant nor defense counsel asked for one. At the plea hearing, Defendant entered a plea of guilty to the one count criminal information. The Court commenced the hearing by asking Defendant a series of standard preliminary questions to which Defendant responded. Mr. Shah did not indicate that he had any difficulty understanding the Court or answering the questions. *See generally* September 14, 2020 Change of Plea Transcript, ECF No. 40. Defendant indicated that he had read the plea letter and statement of offense himself and when he didn't understand something, he would "ask [his] attorney" who "explain[ed] everything to [him]." Change of Plea Tr., ECF No. 40, at 8:22-25 – 9:1-5. Defendant affirmed that he was "completely satisfied with the services of [his] lawyer in this case." *Id.* at 10:5-7. The Court explained the rights being given up by Defendant by pleading guilty, and Defendant provided direct answers indicating that he understood that he was waiving these rights. *See generally, id.*, at 10-17.

The Government then read into the record the statement of offense that had been signed by Defendant, and the Government applied the facts in the instant case to the elements of the conspiracy to which Defendant had agreed to plead guilty. *See id.* at 18-32. Afterwards, the Court asked Mr. Shah whether he generally agreed with the representations made by the Government. Defendant disputed the length of time he had worked with Subcontractor #2, identified his manager [co-conspirator 1], and briefly summarized his work ("to find a candidate when they

speak Dari and Pashto and send them"), *id.* at 33:7-10.  *See generally* ECF No. 40 at 32-33.  Defendant agreed that he "worked for the company and the purpose of the company was to find linguists and people who spoke Dari or Pashto and English in order for them to be sent to Afghanistan with U.S. combat troops," and further, that part of the recruiting process entailed getting personal information from the candidates.  *Id.* at 33:17-25; 341-10 (noting that sometimes his manager would take the personal information).

The Court then questioned Defendant about the two prongs of the fraud scheme; *i.e.*, (1) sharing of test questions with linguist candidates, *id.* at 35-38; and (2) impersonation of candidates during language tests conducted via telephone, *id.* at 38-39.  While Defendant was copied on emails in which his co-conspirators discussed sharing test questions with candidates, Defendant denied personal involvement in this part of the conspiracy.  He did affirm however that he "[knew] they were cheating." ECF No. 40, at 37:22-24, 41:6-9.  In contrast, Defendant admitted that he "took the test for somebody else [who had] failed the test, [and he] took it so they could pass."  *Id.* at 39:3-6.

The Court questioned Defendant on this narrower set of facts admitted by Mr. Shah, and the Court ascertained that: (1) Defendant worked for Subcontractor #2 to recruit linguists for service in Afghanistan, *id.* at 43; (2) as part of the recruiting process, candidates took a language skills test via telephone, *id.* at 43-44; (3) Mr. Shah took a test for Candidate #18, who had not passed the test, and he "answered questions as if [he] were the candidate;" *id.* at 45-49, and (4) Defendant received $250.00 for his deceptive actions, *id.* at 49.  Because Defendant denied involvement in the test answer-sharing portion of the conspiracy, the Court directed the parties to file a revised [narrower] Statement of Offense, *id.* at 50, which was done later.  *See* Statement of Offense, ECF No. 13.

The balance of the September 14, 2020 plea hearing was spent reviewing each paragraph of the plea agreement, *id.* at 53-83, which Defendant indicated that he understood, and had read and discussed with his counsel. ECF No. 40, at 51:17-25- 52:1-5. Defendant provided clear and direct answers to the Court's questions about the terms of the plea agreement. Before accepting Defendant's plea, the Court inquired and Defendant affirmed that he was entering the plea of guilty "voluntarily and of [his] own free will." *Id.* at 85:22-24. Defendant affirmed additionally that he was "entering [a] plea of guilty because [he was] guilty[.]" *Id.* at 85:25-86:1-2. Defendant affirmed also that he "underst[oo]d everything," and there was nothing he wanted to ask the Court. ECF No. 40 at 86:6-11. Defendant then indicated that he pleaded guilty to the conspiracy to commit offense against the United States, which is the wire fraud and the major fraud. *Id.* at 87:2-6. The Court noted that it was satisfied that "Defendant, Mr. Shah, is fully competent, capable of making a decision today, [and he] understands the nature and consequences of what he's doing" and furthermore, he is "acting voluntarily of his own free will. . . " *Id.* at 87:11-16.

### III. ARGUMENT

**A. Defendant Argues that the Rule 11 Hearing was Tainted**

Defendant contends that he should be permitted to withdraw his guilty plea on grounds that he expressed a desire not to plead guilty; his lack of English language skills and formal education hindered his understanding of the charge; and his judgment was clouded by emotional distress due to the death of his son. The Court concludes that these arguments do not provide fair and just grounds for granting withdrawal of Defendant's plea.

If a plea is tainted because it was "entered unconstitutionally, or contrary to Rule 11 procedures," then the standard for allowing withdrawal of a plea is "very lenient." *United States v. Barker*, 514 F.2d 208, 221 (D.C. Cir. 1975). Under such circumstances, pleas "should almost always

be permitted to be withdrawn," whether or not a defendant asserted his legal innocence. *Id.* A plea is "constitutionally valid" only if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. McCoy*, 215 F.3d 102, 107 (D.C. Cir. 2000) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)) (internal quotation marks omitted). Accordingly, where there is no taint in the Rule 11 hearing itself, trial courts should be "extremely reluctant" to grant a motion to withdraw, even where defendant has raised a legally cognizable defense. *Cray*, 47 F.3d at 1208.

As a preliminary matter, Defendant focuses part of his argument for withdrawal of the plea on comments made by Mr. Shah during the July 28, 2020 hearing, which did not result in entry of a plea. In fact, after Defendant indicated that he had an injury from when he was deployed; he was only with the company for a short period of time; and he was not certain he could remember what happened in 2011, this Court addressed Mr. Shah's commentary by converting the hearing from a plea hearing to a status hearing. July 28, 2020 Transcript, ECF No. 41, at 8-9. The Court directed that defense counsel "should have further discussion" with his client before a plea hearing could proceed, and both counsel agreed with that statement. *Id.* at 9-10.

Defendant argues also that "[d]espite the fact that Mr. Shah clearly disputed the Government's statement of offense . . . during the July 28 hearing, no amendment was made to either the plea agreement or the statement of offense afterwards." Def.'s Mem., ECF No. 42-1, at 4. The Court disagrees with Defendant's characterization that Mr. Shah "clearly disputed" the statement of offense during the July 28, 2020 hearing, as facts underlying the charge set forth in the plea were discussed only summarily at that hearing. Furthermore, Defendant's assertion that changes to the plea agreement or statement of offense should have followed from that status hearing are unsupported. There is no indication that Mr. Shah <u>challenged</u> any particular portion(s)

7

of the plea agreement or statement of offense during the July 28, 2020 hearing; rather, he alleged a general lack of memory and noted (without further explanation) an injury. And this narrative by Defendant resulted in the rescheduling of a plea hearing. The Court turns now to consideration of the September 14, 2020 plea hearing where the plea and statement of offense were discussed in detail and the Defendant's plea was accepted by this Court.

### 1. Defendant Asserts that He Expressed A Desire Not to Plead Guilty

Defendant begins by arguing that "Mr. Shah's responses during the plea colloquy [at the September 14, 2020 hearing] continued to indicate that he did not agree with the Government allegations." Def.'s Mem., ECF No. 42-1, at 5. This is accurate insofar as Defendant denied personal involvement in sharing test answers with candidates, but Defendant ignores that the Court and the Government accepted that denial and relied on other facts to support the conspiracy charge. The Court summarized the Government's conspiracy claim as follows:

> And then in terms of the major fraud, the scheme was basically to - - there were candidates that were supposed to be linked to it who were not proficient and not competent, frankly, to be chosen. And so there were a couple of different ways that they were - - that they passed muster in terms of being used and the companies getting paid. One was cheating in terms of knowing what the test questions were and telling them about it; and the second one, which is the one Mr. Shah was involved in, was taking the test on behalf of a candidate who had failed it so that that candidate could pass.
>
> In terms of the fraud, the fraud against the United States is that the Government is paying for candidates, linguists, who are proficient when it's clear that these linguists are not proficient, that they can't pass tests without cheating, knowing the questions in advance. And in some instances, someone else would take the test in order for them to pass it.

Change of Plea Tr., ECF No. 40, at 41:12-25-42:1-4.

The Court found further that, with regard to the wire fraud, there were emails sent through interstate commerce which "would put Mr. Shah on notice that others, even if he wasn't engaged in this, were giving the questions to other candidates in order for them to be able to know in

8

advance and cheat . . . ." ECF No. 40, at 42:5-10.  There was also an email that was "sent to [Defendant] on September 20th in which he is called to take a test for this candidate who didn't pass [a]nd he calls and pretends to be this Candidate No. 18, and he is asked these questions and passes the test on behalf of the candidate." ECF No. 40, at 42:13-17.

      While the Court stated initially that it seemed a "close call," the Court then questioned Mr. Shah in explicit detail to regarding his involvement in the conspiracy.  The Court found that Defendant "acknowledges that he knows about the manager, and obviously he's aware of other people involved in this scheme to defraud the U.S. Government into paying for unqualified linguists, because he gets these emails." ECF No. 40, at 51:5-9.  The Court noted that, "[h]e took the test for the person [Candidate 18] and he got the email about the rest, [and] [t]hese are material facts, because these are the way they got candidates who were not qualified to be qualified and recruiting bonuses to be paid." *Id.* at 51:13-16.  Moreover, Mr. Shah affirmed that he received a bonus for the hiring of Candidate 18.  *Id.* at 49: 22-25- 50:1-3.  The Court concluded that there was an "adequate factual basis for the plea" before accepting it.   ECF No. 40, at 87:13-15.  Because Mr. Shah denied involvement in sharing test answers, the Court directed that the statement of offense be modified to reflect only the portion(s) to which Mr. Shah agreed.

      Defendant argues that he only agreed to a "small piece" of the statement of offense, but again, what he agreed and disagreed with was acknowledged by the Court and the Government during the plea hearing. Moreover, disputed facts were removed from the statement of offense, *see* ECF No. 13.   The Government contends that Defendant "unambiguously admitted to conspiring with CC-1 to take a test on behalf of Candidate #18 and did not express any confusion about conspiracy liability with respect to this aspect of the conspiracy." Govt. Opp'n, ECF No. 44, at 13. While Defendant responded "no" to the Court's [beginning of a] question "whether he

kn[e]w [he was] taking the test for somebody else to pass - - ," he then responded "[y]es, [y]ou're correct" when the Court completed the question by asking if he was "acting like a candidate, [w]hen they called [him] [and he] answered questions as if [he] were the candidate." ECF No. 40, at 45:13-19.

Defendant proffers that "under the Court's continued questioning, Mr. Shah eventually changed his initial response and agreed that he knowingly took one test for one candidate in September 2011," but Defendant asserts that these "inconsistencies" demonstrate that "he could not fully comprehend the Court's questions." Def.'s Mem., ECF No. 42-1, at 11.  The Court finds that while Defendant cherry picks a few quotes from the transcript of the plea hearing [where Defendant deflects the question by pointing to his manager telling him what to do], this discounts the Defendant's affirmative responses to each of the Court's multiple subsequent questions on whether Mr. Shah knowingly took the test for Candidate #18, and whether he received money for doing that.  *See id.* at 45-50.  Accordingly, this Court rejects Defendant's arguments that he expressed a desire not to plead guilty, or that such "desire" was reflected in his answers to this Court's inquiries.

### 2. Defendant Asserts that His Lack of English Language Skills and Formal Education Hindered His Understanding of the Charge

Defendant asserts that Mr. Shah was unable to understand this Court's questions or the nature of the conspiracy charge because the proceeding was conducted in his "non-native language [and he had] only an incomplete high school education." Def.'s Mem., ECF No. 42-1, at 1.  A review of the transcript from the plea hearing does not support Defendant's assertions, and Defendant points to nothing specific in the record to illustrate his argument.  The Government contends and this Court agrees that at no point did Defendant "ask[ ] the Court to clarify a

10

statement or question, or ma[k]e a statement that could indicate that he did not understand the nature of the proceedings." Govt. Opp'n, ECF No. 44, at 10.[3] Defendant's answers in English were responsive and concise, and this Court asked repeatedly whether Defendant had any questions, which he indicated he did not. The Government notes that "no party to the hearing — including the Court, the government, defense counsel, and (perhaps most importantly), the court reporter — ever indicated having difficulty understanding the defendant's response." *Id.* at 11. While an interpreter was not present during the plea hearing, at no time did either Defendant or his counsel request an interpreter.[4] Defendant alleges that he "did not request a translator because he did not know he had the right to request one, not because he did not need one," Def.'s Reply, ECF No. 45, at 4, but obviously neither Defendant's counsel, nor the Government, nor the Court noted that Defendant had any difficulties understanding and responding to questions, which would have signified the need for an interpreter. At the end of the plea hearing, the Court concluded that Mr. Shah was fully competent and capable of making his decision and that he understood the nature and consequences of what he was doing, and he was acting on his own free will, and this Court stands by that conclusion. Accordingly, the Court rejects Defendant's contention that the plea colloquy indicates that he did not fully understand the questions or the nature of the charge

---

[3] The Government indicates that there is "substantial extrinsic evidence that the defendant reads, writes, speaks, and understands English" based on emails in which "defendant and his co-conspirators communicated about the cheating scheme in English" as well as the fact that the testing for candidates was in Dari and/or Pasto <u>and</u> English, and also, the government has interviewed Defendant without the aid of an interpreter. Govt. Opp'n, ECF No. 44, at 12.

[4] Defendant argues that his counsel "only communicated with him in English," Def.'s Mem., ECF No. 42-1, at 9-10, but that statement seems to illustrate Mr. Shah's proficiency in English. He asserts also that he only had "three days to review and discuss the plea agreement," Def.'s Mem., ECF No. 42-1, at 9, but when the Court suspended the plea hearing in July 2020, counsel was directed to speak to his client and the parties were directed to file a status report prior to any plea hearing.

11

because English is not Defendant's native language and he is not formally educated.

### 3. Defendant Argues that his Judgment was Clouded by Depression and Emotional Distress

Defendant proffers that his judgment was clouded by depression and emotional distress stemming from the loss of his son in a tragic traffic accident a few days after the July 28, 2020 status hearing. Defendant asserts that "[t]his enormous emotional distress clouded Mr. Shah's judgment and impaired his cognitive and verbal communication ability during the September 14, 2020 hearing, as his responses clearly indicated obvious inconsistency and inability to comprehend questions from the Court." Def.'s Mem., ECF No. 42-1, at 12. The Court sympathizes with Defendant and acknowledges the enormous emotional distress resulting from this type of trauma; however, there is no indication in the record before this Court that Mr. Shah's emotional distress impaired his cognitive and verbal communication in any way. At the beginning of the hearing, the Court inquired and Mr. Shah denied that he had received "treatment for a mental illness or some emotional disturbance, [or] depression." *Id.* at 9:17-21. The Court observed Defendant's demeanor and found him to be alert and attentive, and his answers to the Court's questions were responsive and articulate. The Government notes that "Defendant has not offered any evidence in the form of psychiatric evaluations or affidavits that would indicate a diminished mental capacity." Govt. Opp'n, ECF No. 44, at 13. While acknowledging that Defendant was certainly experiencing a huge amount of emotional distress due to his son's death, the Court finds nothing to link such emotional distress to an impairment in Defendant's ability to enter the guilty plea knowingly and voluntarily, and accordingly, Defendant's argument in that regard is rejected.

### B. Defendant Argues that he has a Viable Claim of Innocence

Under the first factor, a defendant seeking to withdraw a guilty plea "must make out a

12

legally cognizable defense to the charge against him." *McCoy*, 215 F.3d at 106 (quoting *Cray*, 47 F.3d at 1207) (internal quotation marks omitted). A general denial is insufficient; instead, the defendant must "affirmatively advance an objectively reasonable argument that he is innocent, for he has waived his right simply to try his luck before a jury." *Id.*; *United States v. Asaifi*, Criminal Action No. 04-401-02 (RMC), 2007 WL 1322098 at *5 (D.D.C. May 3, 2007); *United States v. Basu*, 531 F. Supp. 2d 48, 55 (D.D.C. 2008); *see also United States v. Robinson*, 498 F. Supp. 2d 328, 332-33 (D.D.C. 2007) (a claim of innocence must be more substantial where a Rule 11 hearing was conducted properly with no constitutional violations).

In the instant case, Mr. Shah asserts that the Government's case relies on telephone calls and an allegation that Mr. Shah fraudulently took a test on behalf of Candidate #18 so that the candidate could pass the test by cheating. Defendant notes that the Government presented a September 20, 2011 email to Defendant from his then-supervisor, telling him that he "ha[d] to take the Imtehan [test] for Basharee [Candidate 18]," but there is no responsive email from Defendant. Def.'s Mem., ECF No. 42-1, at 13. Furthermore, "Mr. Basharee did not even recall the name 'David Shah,'" and there are no emails between the two of them. *Id.* Defendant points to the parallel case against other alleged members of the conspiracy, *United States v. Answari*, No. 1:21-cr-00085-LMB (E.D. Va. June 23, 2021) (which was dismissed for pre-indictment delay), where the Government's proffered evidence was characterized by the judge there as "insurmountable hearsay." Def.'s Mem., ECF No. 42-1, at 7 (internal citation omitted).

The Government argues that "the defendant does not even attempt to present an objectively reasonable argument as to his innocence, but simply notes the various minor gaps in the government's evidence that would be present in any case." Govt. Opp'n, ECF No. 44, at 14. The Government summarizes its evidence against Defendant as follows: (1) on or about April 8, 2011,

13

a language test for Candidate #18 was administered via telephone, at a number using a Georgia-based area code, and the individual who took the test failed; (2) on or about September 16, 2011, a second language test was administered via telephone using the same number, and the individual who took the test expressed a desire for a face-to-face test, so the test was only administered partially and no score was recorded; (3) on or about September 19, 2011, Mr. Shah's then-supervisor sent him the aforementioned email telling him to take the test for Candidate #18, to which Mr. Shah responded on or about September 19, 2011, with "Call what him[,]" and his then-supervisor reiterated on or about September 20, 2011 that Defendant had to take the test for Candidate #18; (4) a third language test for Candidate #18 was administered via telephone, at a number using a New York-based area code, and the individual who took the test passed.  Govt. Opp'n, ECF No. 44, at 15.  The Government has presented Defendant with recorded copies of the audio calls, and Candidate #18 identified his Georgia-based number and his voice on the audio recordings of the first two tests but not the third.  *Id.* at 15-16.  The New York-based number – used in connection with the third test – was identified in Defendant's email signature block and on several documents as his mobile number, while the subscriber of that number admitted to being in a relationship with Mr. Shah during the relevant time frame and allowing him to use that number.  *Id.* at 16.  Defendant received $250.00 for recruiting Candidate #18.  *Id.*

       The Government concedes the gaps in its evidence that Defendant points to are: (1) there was no acknowledgment by Defendant of his then-supervisor's instructions; (2) Candidate #18 does not remember Mr. Shah; and (3) there is no email receipt of Candidate #18's personal information by Mr. Shah.  Govt. Opp'n, ECF No. 44, at 18.  The Government acknowledges that Defendant could have attempted to "poke holes in the government's case at trial."  Govt. Opp'n, ECF No. 44, at 17.  These gaps in evidence do not demonstrate however that the Government's

evidence is insufficient to prove Mr. Shah guilty or that he is actually innocent. While Defendant may not have responded in writing to his then-supervisor, the third test was taken by someone other than Candidate #18, who was calling from a number linked to the Defendant, and there are audio recordings that the Government could use to try to identify Defendant. Whether or not Candidate #18 knew or knew of Mr. Shah is not a critical part of the evidence. Furthermore, Mr. Shah need not have obtained Candidate #18's personal information directly from Candidate #18. Accordingly, this Court rejects Defendant's allegation that he has a viable claim of innocence.

### C. Prejudice

As a final factor, this Court considers whether or not the delay between the guilty plea and the motion to withdraw has substantially prejudiced the Government's ability to prosecute the case. In this case, the Government "does not argue that it would be substantially prejudiced if the defendant were allowed to withdraw his guilty plea." Govt. Opp'n, ECF No. 44 at 9 n.6. Because the Government does not argue that it would be prejudiced by Defendant's withdrawal of his guilty plea, this factor does not interfere with Defendant's motion to withdraw. However, this factor has never been dispositive in our cases." *United States v. Curry*, 494 F.3d 1124, 1128 (D.C. Cir. 2007) (upholding denial of withdrawal of guilty plea even though the Government did not argue prejudice) (quoting *United States v. Hanson*, 339 F.3d 983, 988 (D.C. Cir. 2003)). Accordingly, even though the Government does not claim prejudice from the withdrawal, Defendant Shah's motion to withdraw remains insufficient as he has failed to establish that his plea was tainted or that he has a viable claim of innocence or a cognizable defense.

### D. Hearing

As a final matter, this Court must decide whether an evidentiary hearing is warranted in this case. Generally, when a defendant seeks to withdraw a guilty plea, "the district court should

hold an evidentiary hearing to determine the merits of the defendant's claims." *Taylor*, 139 F.3d at 932. While claims "frequently concern matters outside the trial record," some motions to withdraw a guilty plea "can be resolved on the basis of trial transcripts and pleadings alone." *Id.; see United States v. Thomas*, 541 F. Supp. 2d at 22-26 (concluding that an evidentiary hearing was unnecessary because defendant's claim was insufficient to render a plea invalid even when defendant argued that prior counsel failed to investigate fully); *Robinson*, 587 F.3d at 1127-33 (finding district court did not err in denying evidentiary hearing as the defendant's pleas were not tainted despite alleged coercion by the government).

Here, the Court finds that an evidentiary hearing is unnecessary, as most of the allegations relied upon by Defendant revolve around statements he made at the plea hearing and the manner in which he responded to the Court's questioning, and the Court may review the transcripts of the status and plea hearings and was able to observe via videoconference the Defendant's demeanor during the hearings. Additionally, the Court notes that "[a] district court should ordinarily conduct an evidentiary hearing *upon request*." *See Thomas*, 541 F. Supp. 2d at 23 (emphasis added); *United States v. Sibblies*, 562 F. Supp. 2d 1, 3 (D.D.C. 2008) (reciting the same standard). In this case, Mr. Shah never requested that the Court hold an evidentiary hearing in connection with his motion to withdraw.

For these reasons, the Court concludes that it would not be benefitted by an evidentiary hearing. *See Curry*, 494 F.3d at 1131 (finding that there was "no need for the court to conduct an evidentiary hearing" where the material facts were not in dispute).

## IV. CONCLUSION

For the foregoing reason, the Court DENIES Defendant David Shah's [42] Motion to Withdraw Guilty Plea. Defendant Shah has failed to show that his plea was tainted or that he

has a viable claim of innocence or cognizable defense to the charge to which he pled guilty. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE